## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NORTHERN DIVISION

KAVON ARNOLD,                           )
                                        )
    *Plaintiff,*                          )
                                        )
v.                                      )    **Civil Action File No.:**
                                        )
CITY OF SOUTH FULTON,                   )
                                        )
                                        )    **JURY TRIAL DEMANDED**
                                        )
                                        )
    *Defendant*                          

---

## COMPLAINT FOR MONETARY DAMAGES

Plaintiff KaVon Arnold files this complaint against the Defendant, alleging that the Defendant violated her rights under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because a substantial part of the events and omissions giving rise to the claims occurred in this district and division.

## PARTIES

2.

**Plaintiff KaVon Arnold** is a Georgia resident and citizen currently residing in Fulton County.

3.

**The Defendant City of South Fulton** is a municipality lawfully created in the State of Georgia and has the requisite powers and authority provided to it by the Georgia Assembly. The Defendant City of South Fulton may be sued in its legal capacity and can be served with process through its Mayor and City Manager.

## INTRODUCTION

4.

The harassment and violation of Ms. Arnold's rights was so bad that the Defendant's own human resources department concluded, after an investigation, that Chief Meadows had violated Ms. Arnold's FMLA rights, while subjecting her to an unbearable hostile work environment (see Ex. 1 for the City Investigative Report). Specifically, after obtaining evidence through it investigation, the Defendant admitted that (1) "Ms. Arnold **did not return** to the same or **equivalent job** as required by USDOL." And that, (2) "[t]he available

evidence indicates that Ms. Arnold faced an unfavorable experience upon her return from FMLA leave, which aligns with the criteria **for a toxic work environment**." (See Ex. 1.) For these reasons and many more, Ms. Arnold files suit.

## STATEMENT OF FACTS

**A. Briefly about Ms. Arnold**

5.

Ms. Arnold was born in Shreveport, LA and then her family immediately moved to Atlanta, GA, where she completed grade school and graduated from Performing Arts High School.

6.

After graduating high school, Ms. Arnold graduated college in Louisiana, B.A. degree.

7.

In her 20s, she was a caregiver for her mother, who was battling breast cancer, while also working as a flight attendant.

8.

Ms. Arnold transitioned into a marketing career with a fortune 500 company, eventually becoming Georgia's area director of sales and marketing.

9.

Ms. Arnold eventually began working for the Fulton County District Attorney's Office as its social media and brand manager. Then, Ms. Arnold began working with the City of South Fulton in 2023 as a senior communications manager for the mayor and the city council. Ms. Arnold eventually transitioned into a job at the South Fulton Police Department (SFPD), where she was eventually given the title of Deputy Chief of Staff.

10.

Notably, Ms. Arnold is a classically trained ballerina, starting at around the age of 3 through to her 20s, performing at collegiate level in plays and video, and government events, inter alia.

### B. Ms. Arnold takes leave under the FMLA

11.

Ms. Arnold was approved for leave under the Family Medical Leave Act (FMLA) from July 30, 2024, to September 30, 2024.

12.

Subsequently, Ms. Arnold submitted the necessary documentation and was authorized for intermittent FMLA leave from September 4, 2024, to March 4, 2025.

**C. The City takes Ms. Arnold's job away while she is on leave under the FMLA**

13.

While on FMLA leave, the Defendant secured a contract with a vendor to perform the job duties assigned to Ms. Arnold.

14.

Ms. Arnold did not find out about the contractor to whom the City gave her job to until her first day back from FMLA leave.

15.

Realizing that her job had been taken while she was on leave under the FMLA, Ms. Arnold filed a complaint with human resources, making the following allegations:

a. Ms. Arnold claims that a contractor hired by Lexicon Strategies had taken over her position and responsibilities. The deliverables associated with Lexicon Strategies closely resemble the job duties assigned initially to Ms. Arnold.

b.  Ms. Arnold feels she has been mistreated, as her former responsibilities have been reassigned without her knowledge.

c.  Prior to filing her complaint, she did not receive any communication outlining these changes or their potential impact on her role within the SFPD.

d.  Upon returning to the office, Ms. Arnold found that no clear boundaries were defined for her position, leading to conflict between her and the contractor for Lexicon Strategies. When she sought a meeting to clarify her role, leadership did not support her requests.

e.  Ms. Arnold has made every effort to clarify her responsibilities and adjustments to her role, but those efforts have been unsuccessful.

**D. Defendant's own investigation and conclusions regarding Ms. Arnold's complaint to human resources**

16.

The City performed an investigation and according to the City's Human Resource Representative, the City gave "a lot of time and detail" to the investigation and were "super specific," while also seeking "outside guidance."

17.

The human resources department conducted witness interviews; witness #2 confirmed, inter alia, that (1) upon Ms. Arnold's return from

FMLA leave, the employee noticed that the assigned seating arrangement, significant portions of the job duties, and her physical designation in COMSTAT meetings had changed, and (2) in response to Ms. Arnold's concerns, no efforts were made to gather all affected parties to develop a strategy for managing work in the SFPD department's communications area. This included discussing internal communication strategies and addressing task designations. The request for a meeting was not accepted and the meeting did not occur. It was mentioned during the discussion that no attempts were made to resolve the existing issues until human resources and the assistant city attorney became involved in the matter (see Ex. 1).

18.

Witness #5 confirmed that the responsibilities assigned to Ms. Arnold were outlined as contract deliverables that Lexicon Strategies was contracted to perform.

19.

The Defendant, after interviewing witnesses, reviewing governing policies, and taking other investigative measures, concluded, inter alia, that "it was reasonable to expect **Ms. Arnold to return to the same or similar position within the SFPD upon returning from FMLA**. **This did not occur**, and the

decision to change or adjust her job directly impacted her position as the Deputy Chief of Staff." (see Ex. 1).

20.

Relevantly, the law states the following:

"In general except as provided in subsection (b), any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave — (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

21.

Said investigative report also concluded the following:

"As a result of the actions of the SFPD, the following are substantiated:

1. When Ms. Arnold returned to work on October 1, 2024, elements of the duties assigned to the Deputy Chief of Staff had been delegated to Lexicon Strategies. Ms. Arnold **did not return** to the same or **equivalent job** as required by USDOL.

2. Ms. Arnold was **subject to unfair or prejudicial treatment as an employee who returned** from an approved leave and was subject to specific provisions offered under intermittent leave under the FMLA.

3. Ms. Arnold confirmed that no conversations were held to discuss the changes or adjustments made to her role before the complaint was filed on October 23, 2024.

4. The decision to delegate portions of the duties assigned to the Deputy Chief of Staff role significantly influenced the scope of the work and noticeably changed the essence of the job (see Ex. 1)."

22.

Lastly, after a review of the facts acquired during its investigation, the Defendant concluded that "The available evidence indicates that Ms. Arnold faced an unfavorable experience upon her return from FMLA leave, which aligns with the criteria for a toxic work environment" (see Ex. 1).

Upon information and belief, the denial to restore Ms. Arnold to an equivalent position, or her previous position, was not done out of necessity "to prevent **substantial and grievous economic injury** to the operations of the employer [the Defendant]." Relevantly, the Defendant did not eliminate Ms. Arnold's position; rather, the Defendant merely assigned her duties to by Lexicon Strategies.

**E. Retaliatory investigation by the Defendant**

23.

Unfortunately, the Defendant continued to retaliate against Ms. Arnold, magnifying what the Defendant had already deemed a toxic, hostile work environment; the Defendant placed Ms. Arnold on disciplinary leave while demanding she undergo a polygraph test regarding the circumstances, despite the fact that Ms. Arnold patently did not violate any governing rule or regulation.

24.

Ms. Arnold's superior officer commanded her to discuss the contents of a meeting with the chief and Ms. Arnold answered her superior officer's questions.

**F. Some of Ms. Arnold's damages**

25.

The environment had become so hostile that Ms. Arnold was rushed to the hospital, suffering from an anxiety attack.

26.

She is currently taking multiple prescription medications due to what even the Defendant has deemed a toxic, hostile work environment.

**G. Defendant takes Ms. Arnolds Job away again while she is on FMLA**

27.

Ms. Arnold took another approved FMLA and was scheduled to return April 19, 2025.

28.

On April 8, 2025 the Defendant approved another contract for the same company, by Lexicon Strategies, to perform all the duties of Ms. Arnold's job position, again. Defendant intentionally gave her job away while knowing she was on FMLA and upon information and belief have zero intention to provide her with a similar position because it makes no sense to have two people doing the same job.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
**(Against Defendant)**

29.

The Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–28, as if fully stated herein to support all allegations made in this count.

30.

Governing law states the following:

"In general except as provided in subsection (b), any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave — (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

31.

Upon her return from FMLA, the Defendant did not "restore[] [Ms. Arnold] to **an equivalent position** with **equivalent employment benefits, pay, and other terms and conditions of employment**," nor did the Defendant restore Ms. Arnold to the "position of employment held by the employee when the leave commenced."

32.

Based on the facts and assertions incorporated to support this count, facts that also demonstrate the Defendant's own admissions that Ms. Arnold's FMLA rights were violated, the Defendant has violated Ms. Arnold's rights protected under the FMLA.

33.

Upon information and belief, the denial to restore Ms. Arnold to an equivalent position, or her previous position, was not done out of necessity "to

prevent **substantial and grievous economic injury** to the operations of the employer [the Defendant]."

## COUNT II
### ATTORNEY FEES AND COSTS

34.

The Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–33, as if fully stated herein to support all allegations made in this count.

35.

Based on the facts to support this count, Ms. Arnold is entitled to **reasonable** attorney fees and costs under 42 U.S.C. § 1988, inter alia.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Arnold respectfully prays and requests a trial by jury and judgment of this Honorable Court against the Defendant as follows:

   (a) That the process issue and service be had on the Defendant;

   (b) That judgment be granted in favor of the Plaintiff against the Defendant on all matters the Court deem matters of pure law, jointly and severally, for the injuries of the Plaintiff and that all other matters be resolved by a jury;

   (c) That the Plaintiff be awarded the relief she seeks;

(d) That the Plaintiff recovers all costs of litigation, special damages, compensatory damages, punitive damages, and reasonable attorney fees;

(e) Ms. Arnold request 3M in total compensation;

(f) That a jury trial be had on all issues so triable; and

(g) That this Court enters and awards such other and further relief to which the Plaintiff may be entitled as a matter of equity or which the Court so determines to be just and proper.

Respectfully submitted on May 23, 2025,

<u>**/s/ MARIO WILLIAMS**</u>
Mario Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C
Sandy Springs, Georgia 30342
(470) 257-2485
mwilliams@hdrattorneys.com
*Counsel for Plaintiff*