

**INVESTIGATION SUMMARY**

Complainant: Ms. LaToya KaVon Arnold
Department: South Fulton Police Department
Position Title: Deputy Chief of Staff

Respondent: Captain Jubal Rogers
Department: South Fulton Fire Department
Position Title: Chief of Staff

Human Resource Compliant: **Hostile Work Environment**

Open Date: October 23, 2024
Close Date: December 5, 2024

**<u>Scope of the Investigation</u>:**

The Office of Human Resources investigated a complaint reported to the City of South Fulton's Human Resource Department on October 23, 2024. The extent of this investigation involves a complaint that Ms. LaToya KaVon Arnold submitted. She is currently the Deputy Chief of Staff with the South Fulton Police Department ("SFPD"). As the Complainant, Ms. Arnold has alleged that she has been subjected to a Toxic Work environment since returning from an approved leave of absence. In this complaint, Ms. Arnold asserts that her work atmosphere has changed to the degree that it has created high levels of stress and anxiety in her work experience.

Ms. Arnold submitted the complaint after returning from FMLA and after it was discovered that a contract had been secured to perform the duties assigned to her job. The Respondent to the complaint is Captain Jubal Rogers, the Chief of Staff with the SFPD. Ms. Arnold believes that Captain Rogers utilized his position in the police department to diminish her role and responsibilities before and after she returned to work. Her complaint is centered on her interactions with Captain Rogers, the issues connected to the Lexicon contract, and how their involvement made her feel.

**<u>Background</u>:**

The City of South Fulton hired Ms. Arnold on May 22, 2023. In January 2024, she transferred to the police department as the Deputy Chief of Staff. Her responsibilities included developing a communications strategy for the police, managing the department's image, which encompassed logos, signage, and digital presence—coordinating special events, fostering relationships, working with professional and media contacts, and responding to crises.

1

During a review of the complaint, the Office of Human Resources confirmed that Ms. Arnold was approved for leave under the Family Medical Leave Act (FMLA) from July 30, 2024, to September 30, 2024. Subsequently, Ms. Arnold submitted the necessary documentation and was authorized for intermittent FMLA leave from September 4, 2024, to March 4, 2025. In the complaint, Ms. Arnold asserts that upon returning to work from FMLA, most of the tasks associated with her job have been reassigned to a contractor. Therefore, these actions altered the core of her original job description.

**<u>Specific Allegations:</u>**

- Ms. Arnold claims that a contractor hired by Lexicon Strategies has taken over her position and responsibilities. The deliverables associated with Lexicon Strategies closely resemble the job duties assigned initially to Ms. Arnold.

- Ms. Arnold feels she has been mistreated, as her former responsibilities have been reassigned without her knowledge. Prior to filing her complaint, she did not receive any communication outlining these changes or their potential impact on her role within the SFPD.

- Upon returning to the office, Ms. Arnold found no clear boundaries were defined for her position, leading to conflict between her and the contractor for Lexicon Strategies. When she sought a meeting to clarify her role, leadership did not support her requests.

- Ms. Arnold recognizes that the tasks assigned to the Lexicon Strategies contractor closely align with the duties associated with her current role. It has been suggested that SFPD leadership has perpetuated a hostile work environment.

- Ms. Arnold has made every effort to clarify her responsibilities and adjustments to her role, but those efforts have been unsuccessful.

**<u>Interviews</u>**

Witness 1-

An interview was conducted on October 28, 2024, to discuss events occurring in the workplace that had impacted this employee's well-being outside of work. This employee believes that a member of the SFPD leadership team was attacking them. It was explained that a leader in the department has deliberately created opportunities to alienate this employee from other team members, refuses to respond to information requests necessary to complete the job functions, and has supported a contractor assigned to Lexicon Strategies. This employee has identified specific duties and areas of responsibility that have been reassigned to Lexicon Strategies. As a result, this has created tension, and this employee has been unsuccessful in managing daily assignments associated with her role. During the discussion, Captain Jubal Rogers was identified as the employee responsible for the acts described in this complaint.

Witness 2-

This witness was interviewed on November 7, 2024. During the discussion, the witnesses confirmed that they knew the issues impacting Ms. Arnold's workplace. The employee knew that Ms. Arnold felt her job responsibilities had been reassigned. Upon Ms. Arnold's return from FMLA leave, the employee noticed that the assigned seating arrangement, significant portions of job duties, and her physical designation in COMSTAT meetings had changed.

In response to Ms. Arnold's concerns, no efforts were made to gather all affected parties to develop a strategy for managing work in the SFPD department's communications area. This included discussing internal communication strategies and addressing task designations. The request for a meeting was not accepted, and the meeting did not occur. It was mentioned during the discussion that no attempts were made to resolve the existing issues until Human Resources and the Assistant City Attorney became involved in the matter.

Witness 3-

On December 11, 2024, this employee was interviewed and informed that they were listed as the Respondent to a complaint filed with Human Resources. The employee acknowledged having a working relationship with the *Reporter* and was aware of the complaint. During the discussion, it was explained that the two employees had faced challenges while working together at the SFPD. Their ability to collaborate in the police department had been inconsistent. The employee recognized that the *Reporter* preferred not to engage and stated they were "okay" with this. During the discussion, it was communicated that their abilities to work together in the police department were always "up and down."

Witness 4-

This employee reached out to create a meeting with Police Chief Keith Meadows, Tori Cooper (Lexicon Strategies), Sara Kelly (City Attorney), Ms. Arnold, and Patricia Redfern (COSF-HR Director) to discuss the ongoing concerns that were reported to Human Resources. Several strategies were employed to reset or resolve the complaint. The conversations were explicitly centered around the aspect of the complaint that addressed non-compliance with the employer mandates associated with FMLA. Chief Meadows assured the attendees that efforts would be made from the departmental level to assist Ms. Arnold with being reacclimated back into her position, and clear directions would be provided on task reassignments related to the department's communication strategies.

Witness 5-

This employee participated in discussions to address the conditions following Ms. Arnold's return to work after her intermittent FMLA leave began. They acted as a resource for matters related to Human Resource administration. The employee contributed to the conversations by identifying potential organizational risks associated with the employer's leave of absence requirements. It was communicated to the meeting participants that the responsibilities assigned to the Deputy Chief of Staff position were outlined as contract deliverables that Lexicon

Strategies was contracted to perform. Additionally, it was noted that Ms. Arnold's job description could be perceived as altered, with significant tasks reassigned to Lexicon Strategies.

**Evidence of Record**:

- Employee Interviews
- Job Descriptions
- Lexicon Strategies-Objectives

**Applicable Policy**:

**The City of South Fulton-Workplace Violence and Anti-Bullying Policy:**
**Policy Statement-Bullying**:
- <u>Unwelcome or unreasonable behavior that demeans, intimidates, or humiliates people as individuals or as a group.</u> Bullying behavior is often persistent and part of a pattern, but it can also occur as a single incident.
- <u>Manipulating the work environment- isolating people from regular work interaction,</u> excessive demands, and setting impossible deadlines
- Psychological manipulation- unfairly blaming for mistakes; setting people up for failure; deliberate exclusion; practical jokes; belittling or disregarding opinions or suggestions; criticizing in public.

**United States Department of Labor – Wage and Hour Division**
<u>Employers Guide to the Family and Medical Leave Act</u>
After an employer has determined an employee's FMLA eligibility status, the employer must:
- Provide an Eligibility Notice for the employee, either orally or in writing, informing the employee whether they are eligible for FMLA leave.
- Provide Eligibility Notice to the employee within five business days of the initial request for leave or of learning that an employee's leave may be for an FMLA-qualifying reason unless there are extenuating circumstances.
- Provide the Eligibility Notice the first time the employee takes leave for an FMLA-qualifying reason in the designated 12-month leave year and
- If a significant portion of the employer's workforce is not literate in English, provide the Eligibility Notice in a language in which employees are literate.
- <u>Restore the employee to the same or an equivalent position at the end of the leave.</u>

**Analysis and Conclusion:**

The available evidence does support the fact the SFPD entered into a contractual agreement with Lexicon Strategies to perform the following:

- Crisis Communication:
- Media Relations:
- Monthly Newsletter:
- Press Materials:

- Social Media Management:
- Communication with City Officials:
- Community Engagement:

This report confirms that Ms. Arnold was approved for FMLA from July 30, 2024, to September 30, 2024. Guidance from the United States Department of Labor ("USDOL") requires "that employers restore employees to their same or an equivalent job after leave." Therefore, it was reasonable to expect Ms. Arnold to return to the same or similar position within the SFPD upon returning from FMLA. This did not occur, and the decision to change or adjust her job directly impacted her position as the Deputy Chief of Staff.

As a result of the actions of the SFPD, the following are substantiated:

1. When Ms. Arnold returned to work on October 1, 2024, elements of the duty assigned to the Deputy Chief of Staff had been delegated to Lexicon Strategies. Ms. Arnold did not return to the same or equivalent job as required by USDOL.
2. Ms. Arnold was subject to unfair or prejudicial treatment as an employee who returned from an approved leave and was subject to specific provisions offered under *Intermittent FMLA*.
3. Ms. Arnold confirmed that no conversations were held to discuss the changes or adjustments made to her role before the complaint was filed on October 23, 2024.
4. The decision to delegate portions of the duties assigned to the Deputy Chief of Staff role significantly influenced the scope of the work and noticeably changed the essence of the job.

A toxic work environment is marked by dysfunctional behaviors that impede productivity and foster a hostile atmosphere. These behaviors can include poor communication, bullying, public humiliation, abusive supervision, favoritism, and a lack of trust in decision-makers. There is no evidence in this investigation that Captain Roger's actions were expressly intended to cause harm or undermine Ms. Arnold's experience in the workplace. It has been established that the Chief of Police is responsible for creating the organizational structure and ultimately makes decisions regarding functional changes.

The Chief of Police can assign tasks and adjust duties to align with the department's needs. In this instance, the changes made considerably altered the nature of the employee's role. These modifications were implemented without updating the job description, collaborating with Human Resources and Legal Counsel, and/or adequately communicating the decision to the affected individual. Consequently, these changes were viewed as punitive and degrading to the employee.

The available evidence indicates that Ms. Arnold faced an unfavorable experience upon her return from FMLA leave, which aligns with the criteria for a toxic work environment. The COSF Human Resources department has completed a review of the reported complaints.

*This report will be closed effective December 5, 2024, unless additional information is provided for review.

**Citation (s):**

*C:/Users/sylvie.moses/Downloads/dol224%20 (4).pdf. Family and Medical Leave Act*. (n.d.). DOL.

Https://www.dol.gov/agencies/whd/fmla

Prejudice. (2024). In *Merriam-Webster Dictionary*. https://www.merriam-webster.com/dictionary/